**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| THOMAS SIVERT, ) | |
|  ) | |
|  Plaintiff, ) | |
|  ) | **Civil Action No.** |
|  v.  ) | **09-10707-FDS** |
|  ) | |
| HARSCO CORPORATION, ) | |
|  ) | |
|  Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO DISMISS OR TRANSFER**

**SAYLOR, J.**

This is a personal injury action arising out of an accident involving a production rail

grinder owned by defendant Harsco Corporation.  Plaintiff Thomas Sivert alleges that his finger

was crushed when the hydraulic motor of the 10-inch grinder activated during a test of the

machinery.  Pending before the Court is defendant's motion to dismiss for lack of personal

jurisdiction and improper venue or, in the alternative, to transfer.

**I.      Background**

   **A.      Factual Background**[1]

Thomas Sivert is a resident of West Boylston, Massachusetts.  In July 2007, he was

working for Norton Abrasives of Worcester, Massachusetts, a subsidiary of the Saint Gobain

Corporation.  On July 3, Sivert was on a job site in Spruce Pine, North Carolina, conducting

wear measurements on a production rail grinder known as the RMS-9, a piece of railroad

_____

[1] The parties generally agree on the background facts included in the brief summary that follows.  See Def.
Reply at 2 ("Plaintiff's recitation of the basic facts of the case comports with Harsco's understanding, with only a
few exceptions.").

maintenance equipment owned by Harsco.  At some point during his inspection, the hydraulic

motor of the RMS-9's 10-inch grinder unexpectedly activated, crushing the small finger of his

left hand.

Evidently there were only two eyewitnesses to the accident:  Bill Bouchard of Norton and

Joel Armbrust of Harsco.  After the injury, a co-worker took Sivert to the emergency room of a

hospital in Spruce Pine for medical treatment.  He was then taken to Asheville, North Carolina,

for initial surgery.  He flew home to Massachusetts on July 4.  Six months of follow-up care in

Massachusetts followed, including reconstructive surgery on October 22, 2007, in Worcester and

rehabilitation therapy at UMass Memorial Medical Center that continued into January 2008.

### B.      Procedural Background

On March 25, 2009, Sivert filed suit against Harsco in the Superior Court for Worcester

County, Massachusetts.  Harsco removed the action to federal court on May 4, 2009, pursuant to

28 U.S.C. §§ 1332 and 1446.  It then moved to dismiss the action for lack of personal

jurisdiction and improper venue or, in the alternative, to transfer the action to the Western

District of North Carolina.  Harsco subsequently withdrew its motion to dismiss for lack of

personal jurisdiction under Fed. R. Civ. P. Rule 12(b)(2).  (Def. Reply at 1).  That part of the

pending motion is therefore denied as moot.  While it did not explicitly withdraw the part of its

motion to dismiss brought under Rule 12(b)(3) for improper venue, it no longer appears to

pursue *dismissal*, as opposed to *transfer*, on this basis.[2]  The motion to dismiss for improper

---

[2] *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 ("Technically speaking, motions to transfer are made pursuant to a motion under the statute rather than under Rule 12(b)(3)."). Moreover, having conceded the existence of personal jurisdiction, Harsco has essentially conceded the propriety, if not the desirability, of venue.  *See Systemation, Inc. v. Engel Indus.*, 992 F. Supp. 58, 63 (D. Mass. 1997) ("It is axiomatic . . . that if the Court's exercise of personal jurisdiction is proper, venue is also proper.") (citing 28 U.S.C. § 1391(c); *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994)).

venue will therefore also be denied as moot.

Thus, what remains pending is defendant's motion to transfer venue pursuant to 28

U.S.C. § 1404(a).  For the reasons set forth below, the motion will be denied.

## II.     Analysis

Defendant seeks to transfer this action to the Western District of North Carolina pursuant

to 28 U.S.C. § 1404(a) on the grounds that "[t]he overall facts and circumstances . . .

demonstrate that North Carolina is the most logical and convenient forum."  (Def. Mem. at 5).

Section § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it might
> have been brought.

As the First Circuit has stated, "[t]he plaintiff's forum choice 'should rarely be disturbed'; thus,

'the moving defendant . . . must establish that the private and public interests weigh heavily on

the side of trial in the foreign forum.'" *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st

Cir. 1991) (internal quotations and citations omitted).  "The defendants have the burden to

establish that, on balance, the interests of justice and convenience weigh heavily in favor of

transfer.  Unless the defendant carries its burden, the plaintiff's choice of forum is given

considerable deference." *Systemation, Inc. v. Engel Indus.*, 992 F. Supp. 58, 64 (D. Mass. 1997)

(citations omitted).  Defendant has not carried its burden here.

### A.     Whether Venue is Proper in the Western District of North Carolina

Before proceeding to an "individualized, case-by-case consideration of convenience and

fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted), the

explicit terms of the statute require the initial determination of whether this action could have

properly been brought in the proposed transferee court.

Although initially filed in state court, had plaintiff sought to file a federal diversity action in the first instance, venue clearly would have been appropriate in the Western District of North Carolina.[3]  At a minimum, a substantial part of the events giving rise to the claim occurred in that district.  This action therefore could have been properly brought in the Western District of North Carolina in the first instance.

**B.      Whether the Balance of Convenience and Fairness Weighs in Favor of a Transfer in Venue**

The decision to transfer a case pursuant to § 1404(a) is a matter within the discretion of the district court.  *Stewart Org.*, 487 U.S. at 29; *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977).  In making its determination, the court must consider five factors that bear on the issue of the relative convenience of the two forums, keeping in mind the weight accorded to plaintiff's choice of forum:  (1) the convenience of the parties; (2) the convenience of the witnesses; (3) access to sources of proof; (4) the law to be applied; and (5) the interests of justice.      **1.      Convenience of the Parties**

While Massachusetts is undoubtedly a more convenient forum for plaintiff, defendant has not carried its burden of showing that Massachusetts is significantly more inconvenient for it than North Carolina.  Harsco is a Delaware corporation with its principal place of business in

---

[3] The venue statute, 28 U.S.C. § 1391(a), provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Camp Hill, Pennsylvania.  It is not chartered or headquartered in North Carolina.  In fact,

defendant has an unrelated division that operates in Massachusetts, the presence of which

convinced it to abandon its motion to dismiss for lack of personal jurisdiction.  The only

argument based on geographic proximity arises from the fact that the Rail Division of Harsco,

which is responsible for the operation of the RMS-9, is based in Cayce-West Columbia, South

Carolina.  Nonetheless, it will be only somewhat more burdensome for Harsco to defend here as

opposed to in North Carolina.

It is a different story altogether for plaintiff.  Transferring this case would force plaintiff,

an individual and a resident of Worcester County, to bear the cost of hiring counsel in North

Carolina and of traveling to and from that state.  Any additional convenience to defendant would

be completely outweighed by the inconvenience to plaintiff.  "The presumption in favor of a

plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the

inconvenience from one party to the other." *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d

56, 71 (D. Mass. 2001); *accord Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249

F. Supp. 2d 12, 18 (D. Mass. 2002).  Further, "the balance of convenience focuses on the

comparative financial abilities of the parties and the cost of litigation should be borne by the

party in the best position to absorb and spread it." *Sigros*, 129 F. Supp. 2d at 71.  In the present

action, defendant has not shown that plaintiff is better situated to absorb and spread the costs of

litigation.  The convenience of the parties therefore does not weigh in favor of transferring this

case.

         2.       **Convenience of the Witnesses**

Of the factors considered by the court, the convenience of expected witnesses is

"probably the most important factor, and the factor most frequently mentioned." *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (citations omitted).  In considering this factor, the court must look at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Id.*  "A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.*  The convenience of potential witnesses does not justify transfer of this action to North Carolina.

### a.      Liability Witnesses

Defendant contends that there are at least fifteen potential liability witnesses who were employed by Harsco at the time of the accident and who could testify about working with rail grinders as well as the safety briefing and other events of the day of the accident.  According to defendant, none of these individuals lives in Massachusetts.  Most are situated in the southeastern and midwestern United States.

However, as plaintiff notes, there are only two actual *eyewitnesses* to the incident (other than plaintiff himself).  Neither lives in or near North Carolina; Bouchard lives in Syracuse, New York, and Armbrust lives in Minnesota.  It is likely that Armbrust would consider North Carolina and Massachusetts to be equally inconvenient locations, while Bouchard would likely find Massachusetts more convenient than North Carolina.  Plaintiff has also identified as potential witnesses certain Norton employees who are familiar with the testing procedure being applied at the time of the accident and who performed an "after-action safety analysis" about the accident.  Both reside in the Worcester area.

Moreover, while the convenience of witnesses is given considerable weight, the significance of this factor diminishes when the witnesses are employees of one of the parties. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3851 ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial.") (citing cases); *Sigros*, 129 F. Supp. 2d at 71 ("If, however, a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance."). Of the fifteen Harsco employees who might have relevant testimony concerning the equipment and the events of the day, eight are still employed by Harsco. At least as far as these eight potential witnesses are concerned, defendant can arrange for their appearance in Massachusetts. Because none of the current Harsco employee witnesses even lives in North Carolina, and most live in Texas or Pennsylvania, Harsco would incur the expense of producing those witnesses in either forum. As for the witnesses who are no longer employed with Harsco, defendant has not shown that they would be unwilling or unable to appear in Massachusetts.

**b.       Causation and Damages Witnesses**

As far as the medical witnesses are concerned, defendant notes that all emergency care medical witnesses are located in North Carolina. But, plaintiff contends that aside from twelve hours of care provided immediately after the accident, Massachusetts-based medical practitioners provided the vast majority of his care, treatment, and rehabilitation. According to plaintiff, all of the Massachusetts practitioners are potential causation and damages witnesses. Plaintiff further points out that witnesses who can testify to his diminished functionality and pain

and suffering reside in Massachusetts.

### 3.     Access to Sources of Proof

Defendant contends that evidence is more readily available in North Carolina because

plaintiff received emergency, and at least some follow-up, medical care there.  Defendant also

seems to suggest that there is some relevance to the fact that the RMS-9 operates primarily in the

southeastern United States, including regularly in North Carolina, and "is far more convenient to

the Western District of North Carolina than Massachusetts. . . .   Indeed, the equipment involved

in [this] accident has *never* been in Massachusetts or the northeastern United States in general."

(Def. Mem. at 6) (emphasis in original).

To the extent defendant is pointing to the location of medical records from plaintiff's

treatment in the immediate aftermath of the accident, that consideration is of little importance in

this case.  While the location of records and documents relevant to the litigation is a factor that

the court should consider, it is not a particularly important factor because of the ease with which

that information can be transported to another jurisdiction.  *See* 15 Wright, Miller & Cooper,

*Federal Practice and Procedure* § 3853 ("[S]ince most records and documents now can be

transported easily or exist in miniaturized or electronic form . . . their location is entitled to little

weight.  This is particularly true with the development of photoduplication, facsimile

transmission, the Internet, and the easy availability, excellent reproducibility, and relatively low

cost of hard and electronic copies.").

Whatever significance the location of documents retains in the digital age is minimized in

this case.  The location of some of the medical records in another forum hardly presents a

compelling reason to transfer venue.  Not all, and perhaps not even most, of the medical records

are in North Carolina.  Furthermore, to the extent it is burdensome to produce the North Carolina

medical records and bring them to court in Massachusetts, it will likely be plaintiff's burden, not

defendant's, as he will no doubt rely on them to prove causation and damages.  Because of the

relative unimportance of this factor and the fact that evidence exists in both jurisdictions, this

factor does not support transfer.

It is not at all clear what the import is of the RMS-9's location.  According to defendant,

it is a "massive piece of equipment that is nearly 900 feet long and weighs over 2.6 million

pounds."  (Def. Reply at 5).  Apparently it is the size of a "small freight train."  *Id.*  Surely the

parties have no intention of producing the RMS-9 itself during discovery or introducing it as

evidence at trial.  To the extent either party wishes to introduce diagrams or pictures of the rail

grinder, they are obviously free to do so.  If inspection of the equipment becomes an issue,

plaintiff may do so at his own expense.  Accordingly, the location of the RMS-9 is not a

significant factor.

### 4.     The Law to be Applied

Although the issue has not been fully briefed, it is at least possible that North Carolina

law will apply to this action.  Obviously, the United States District Court for the Western District

of North Carolina has more experience applying North Carolina tort law than a district court in

Massachusetts.   The fact that North Carolina law will be applied slightly favors hearing the case

in North Carolina.  However, the Court is confident that it is capable of applying the common

law of another state.  *See, e.g.*, *Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 613 (E.D.

Va. 2008) ("Even assuming that Virginia law would apply to the action in Illinois, the U.S.

District Court for the Central District of Illinois is competent to apply Virginia law."); *Surgical*

*Outcome Support, Inc. v. Plus Consulting, LLC*, 2008 U.S. Dist. LEXIS 65840, at *14 (S.D. Fla.

July 30, 2008) ("In the event that Florida choice of law rules mandate that Pennsylvania law

should apply to this case, this Court is fully competent to apply Pennsylvania law."); *cf. Atlas Oil

Co. v. Micro-Design, Inc.*, 2009 U.S. Dist. LEXIS 12134, at *12 (E.D. Mich. Feb. 17, 2009)

("Courts usually do not consider the application of foreign law to be an important factor in a §

1404 transfer analysis.").  The First Circuit has found such a factor insufficient even when the

law to be applied is not the law of a sister state but rather that of another country.  "This concern

is not sufficient to overcome the presumption in favor of plaintiffs' chosen forum.  This Court

has previously noted that the task of deciding foreign law is a chore federal courts must often

perform."  *Nowak v. Tak How Invs.*, 94 F.3d 708, 720-21 (1st Cir. 1996) (referring to Hong

Kong law) (internal quotation and citations omitted).

        In any event, defendant has not questioned the Court's competence in this regard, but

rather appealed to North Carolina's "interest in adjudicating disputes that arise within its

borders."  (Def. Reply at 6).  The Court now turns to the broader category of concerns implicated

by this contention.

### 5.        The Interests of Justice

        Defendant contends that North Carolina has a greater interest in the outcome of this case

than Massachusetts because the accident occurred in North Carolina.  While it is certainly true

that North Carolina has an interest in this litigation, Massachusetts has a substantial interest as

well.  "The concern of Massachusetts for the safety of its citizens does not end when the citizen

crosses the border for business or personal reasons.  It cannot be gainsaid that the primary

function of the Commonwealth -- or any other government -- is to guarantee and promote the

health, safety, and welfare of its citizens.  The state also has a manifest interest in providing its

residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Nowak*

*v. Tak How Inv.*, 899 F. Supp. 25, 34 (D. Mass. 1995) (discussing "the forum state's interest in

adjudicating the dispute" in the context of a due process personal jurisdiction analysis) (internal

citations and quotations omitted).  The interests of justice do not preponderate in favor of

transfer.

*     *     *

In summary, the convenience of the parties does not warrant transfer to North Carolina,

as defendant has not convincingly demonstrated that any additional convenience it would derive

from transfer would outweigh the inconvenience it would impose on plaintiff.  Having weighed

the various factors, the Court is not convinced that the balance of conveniences and fairness

outweighs the strong presumption in favor of plaintiff's choice of venue.

## IV.     Conclusion

For the foregoing reasons, defendant's motion to dismiss or, in the alternative, to transfer

is DENIED.

**So Ordered.**

 /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 7, 2009